NORTH JERSEY STREET RAILWAY COMPANY

*v.*

BOARD OF STREET AND WATER COMMISSIONERS OF THE CITY OF NEWARK et al.

[Decided August 1st, 1907.]

1. The decision of the board of street and water commissioners, even though made after notice and hearing, not being conclusive on the question as to whether certain curved rail connections of street railway tracks on different streets constitute a nuisance and are maintained without right, the street railway company may, without waiting for such hearing or attacking the validity of the resolution, apply for an injunction to restrain the removal of the connections pending the trial of the right to remove, either in the chancery court or at law.

2. The Broad Street Railroad Company charter, section 6 (*P. L. 1860 p. 469; MacL. p. 26*), expressly authorized that company to construct a railway through Broad street "and branches from Broad street to the railroad depots of the N. railroad," one of whose depots was the Market street station, on condition that the consent of the common council should be first obtained. No consent was expressly given by the council to the Broad Street Railroad Company before its consolidation in 1863 with the Orange company. The Orange company had, however, previously constructed a line on Market street from the depot up Market street to South Orange avenue, under authority of its charter and an ordinance passed in 1859 giving the city's consent, and in an amendment of such ordinance, passed in 1861, the Orange company was authorized to construct a track on Broad street, "commencing at Market street and running up Broad to Orange street," &c. By the consolidation of the two companies, the Orange company became vested with the rights and franchises of the Broad Street Railroad Company. *P. L. 1863 p. 462 § 2; MacL. p. 13.* The Market street track was connected with the Broad street track by curved rails, commencing at the centre of Market street by the Orange company, but whether the connection was made before or after the consolidation did not appear, but it was made at least as early as 1867, and probably in 1862.—*Held,* that complainant street railway company, as succeeding to the rights of the Orange company, showed such a right to maintain the curved rail connections as entitled it, pending final determination of its right, to enjoin their removal.

3. A connection of the tracks of the same street railway company lying on two different streets is not within an ordinance prohibiting any connection of one railroad with another without consent of the council.

4. A provision of a street railway charter authorizing the company thereby incorporated to construct a railway through the streets of a city on condition that the company should not lay its rails in or along any street without first obtaining the permission of the common council is a privilege given to the city, as having authority over the location and construction of the tracks in public streets, which it may waive, or to which an implied assent may be given by acquiescence, and the failure to obtain such consent does not alone render the construction of the track altogether illegal.

5. *P. L. 1867 p. 86; MacL. p. 59 § 6,* chartering the Newark Horse Car Company, authorized it to "connect with and run over any horse car railroad or railroads running through Newark to the Market street station." By an amendment of its charter (*MacL. Comp. p. 71*) the Newark company was authorized to construct its railroad on any street within the city of Newark on obtaining the consent of the common council, and subsequently (*MacL. Comp. p. 453*) this consent was given by an ordinance which provided that the tracks to be built might be connected at Broad street with the lines of the Orange Railroad company, "as provided by its charter." The Orange company had previously constructed a line on Market street from the station up Market street to South Orange avenue, under authority of its charter, and an ordinance giving the city's consent, and in an amendment of such ordinance the Orange company had been authorized to construct a track on Broad street, "com-

mencing at Market street and running up Broad to Orange street," &c., and the M. street track had been connected with the Broad street track by curved rail connections commencing at the centre of Market street by the Orange company.—*Held*, to show a sufficient right in complainant street railway company, as succeeding to the rights of the Newark company, to maintain the curved rail connections.

6. The charter of the Orange Street Railway Company, section 12 ' (*MacL. p. 11*), provided that, if the company after its road was completed should abandon the same or fail to keep it in repair for one year, the charter should be annulled, and that the city council might remove the road. General Ordinance, section 22, subsequently passed, provided that the common council reserved the power at any time to order the removal of, or to remove, railway tracks and to sell the materials, and, after paying expenses, to pay the balance to the company.—*Held*, that the ordinance (section 22) referred to a removal of the entire road contemplated by section 12 of the charter, and that the removal of a curved rail connection uniting the line of road on two streets because illegally laid, or for any other reason, could not be required thereunder.

On application for preliminary injunction. Heard on bill and affidavits, answers and affidavits and affidavits in reply.

*Mr. Frank Bergen,* for the complainant.

*Mr. Herbert Boggs* and *Mr. Francis Child, Jr.,* for the board of street and water commissioners.

*Mr. Charles H. Halfpenny,* for the town of Bloomfield.

*Mr. Robert M. Boyd,* for Montclair.

EMERY, V. C.

Since 1898, the complainant, the North Jersey company, has maintained, and for at least thirty years previously its predecessors in title maintained, the existing curved rail connections of the street railway tracks on Broad and Market streets, and complainant and all of these companies seem to have maintained and continued them under a claim of right derived from legislative acts or city ordinances, or both. After this long period this right of location of the tracks is now, for the first time, questioned.

The board of street and water commissioners of the city of Newark, which has control of the streets, on February 28th, 1907, adopted a resolution which, after reciting that it was advised that these curved rails and connections were laid without right or authority in law, and are now maintained by complainant without right or authority in law, and that they are a nuisance, dangerous to life and limb, and interfere with the free and uninterrupted use of the streets by vehicles, directed and required complainant, within thirty days to take up and remove these rails and connections, and to restore and repair the pavement in the streets after removal. It was further resolved, that on the complainant's failure to remove the rails and connections, as directed, the superintendent of the board should remove them and repair the streets at the expense of the complainant. The resolution, which was approved by the mayor and served on complainant on March 1st, seems to have been passed without any notice to the complainant or any hearing.

The power of the board of street and water commissioners over nuisances does not extend to the removal, arbitrarily, or until after trial in a competent court, of a structure of this character maintained in a public street under such a claim of right. *Hutton* v. *City of Camden, 39 N. J. Law (10 Vr.) 122 (Court of Errors and Appeals, 1876)*. Complainant might, by *certiorari,* apply to have the resolution of the board for the removal of the tracks vacated, as made without notice or hearing *(Jersey City, &c., Railway Co. v. Passaic, 68 N. J. Law (39 Vr.) 110 (Supreme Court, 1902)*, but, as the decision of the board, if made after notice and hearing, would not, under the decision in *Hutton* v. *Camden, supra,* be conclusive on this question of right, complainant may, without waiting for such hearing or attacking the validity of the resolution as made without notice, apply to this court to enjoin the removal pending the trial of the right to remove, either in this court or at law. And on presenting a case showing the right to such trial, the removal pending trial should be enjoined, as there can be no question that the removal of the rails will seriously affect the operation of complainant's system of roads as at present carried on.

Complainant's right to maintain the curved connections is based on title derived from three different sources.

*First.* From the Orange and Newark Horse Railroad Company, chartered on March 15th, 1859, and the Broad Street Railroad Company, chartered March 21st, 1860, which were consolidated by an act of March 24th, 1863. The sixth section of the Broad Street Railroad Company charter (*P. L. 1860 p. 467; MacL. Comp. p. 26, &c.*) expressly authorized this company to construct a railway through Broad street from the Morris and Essex railroad depot to Clinton township, "and branches from Broad street to the railroad depots of the New Jersey Railroad and Transportation Company." One of these depots was the Market street station, and this charter therefore authorized the construction of the branch from Broad street through Market street, subject, however, to the further provision of section 6, that the company

"shall not lay rails in or along any street in said city of Newark without first obtaining the permission of the common council, upon such conditions and restrictions as the council shall designate and impose."

No consent or permission to lay the rails for this branch to the Market street station seems to have been expressly given by the common council to the Broad Street company, by ordinance or other formal official action, before the consolidation of the two companies in 1863; but the Orange and Newark Railroad Company had previously constructed a double-track road in Market street from the Market street depot, up Market street to South Orange avenue, under the authority of its charter and an ordinance of March 7th, 1859, giving the consent of the city to this construction. *McFarland* v. *O. & N. H. R. R. Co., 13 N. J. Eq.* (*2 Beas.*) *17* (*March Term, 1860*); *affirmed,* on appeal, *13 N. J. Eq.* (*2 Beas.*) *561* (*November Term, 1860*). And on November 1st, 1861, the common council, by ordinance, by a supplement to this ordinance of March 7th, 1859, authorized the Orange and Newark Horse railroad to construct a track for a horse railroad on Broad street, "*commencing at Market street* and running up Broad to Orange street," &c. Whether the Orange and Newark company was, under its own original charter, authorized

to construct two routes to Orange, one by way of Market street and another by way of Broad and Orange streets, might, perhaps, have been questioned, but by the consolidation of the two companies, the Orange and Newark company became vested with the rights and franchises of the Broad Street company (*P. L. 1863 p. 462 § 2; MacL. p. 13*) and, as above stated, the franchises of the Broad street company included the express right to construct a branch from Broad street to the Market street depot, and to lay the track, on obtaining consent of the common council. The Orange and Newark company, before the consolidation, had the consent of the council to lay the track "commencing at Market street and running up Broad street."

The connection of the Market street track with the Broad street track, running north by the curved rails, was made by the Orange and Newark Railroad company, as is admitted by the answer, but whether made before or after the consolidation does not appear. This connection of the tracks by the curved rails, being one which connected two railroads of the same company, was not within the provisions of the fifteenth section of the general ordinance prohibiting any connection of one railroad with another from being made without the consent of the council. This section, as will appear from its provisions, related to the connection of a railroad owned by one company with a railroad owned by another company. Considered, therefore, as a connection of the Broad street and Market street railroad tracks of the same company, the question is whether the lawfulness of this connection or its continued location can now be questioned by the city. My present view is that it cannot, and certainly the right to question the legality of the original location at this late date, is so open to doubt that the complainant is entitled to enjoin the removal pending the final trial of the right, and the production of all the evidence obtainable as to the circumstances of the original location. The reasons, shortly stated, are these. The consent of the city required by the charters of the Orange and Newark railroad and Broad Street railroad seems to relate only to the laying or construction of the tracks, not to the power or franchise of operating a railroad for transportation and tolls, when it had been constructed, which power was given by other

sections (section 12, Orange and Newark charter, and section 7, Broad Street charter). And this right to regulate the conditions of laying the tracks in the city was a privilege given to the city mainly for the purpose of controlling the place of location of the track in the streets, the manner of construction and the protection of the public rights during the construction. A failure to procure the consent would have entitled the city to enjoin the construction and perhaps to require the removal of tracks laid without consent, if this relief was promptly applied for. But the city had, I think, the right to treat the consent given *previous* to consolidation, to the Orange and Newark Railroad company to build a track on Broad street, as a sufficient consent for the construction *after* consolidation, of the track "commencing at Market street," under the ordinance of November, 1861, or for its continuance, if previously constructed. These curved rails do, in fact, commence at the center of Market street, and as there was nothing in this ordinance which precisely fixed the place or manner of commencement, or required the rails either to be laid in a straight line across Market street, or to stop at the north side of Market street, the track "up Broad street," commencing "at Market street" might, as it seems to me, lawfully commence at or on any point of the common intersection of the streets. The precise location of the tracks at the intersection of the streets, and whether the tracks should there cross at right angles or be connected by curved rails, was altogether a matter to be practically settled by the companies and the city, if it was not fixed by the ordinance itself. That a connection by curved rails somewhere at the intersection of the streets was contemplated, seems certain, as otherwise the provision of the general ordinance, section 6 (*MacL. Comp. p. 405*), for a single fare within the city limits, would have been inoperative, no transfers being required by the ordinance. The continuance of the curved-rail connection from at least as early as 1867, and probably from 1862, is such evidence of the actual location of the tracks "up Broad street, commencing at Market street," under the ordinance of 1861, by the railroad company and the city, as would probably entitle the company, on final hearing, to a decree enjoining their removal at

this late date on the claim that they were originally located without authority.

If this construction of the ordinance and statutes is correct, then the North Jersey Railway company, as succeeding to the rights of the Orange and Newark Horse Railroad Company, is entitled, pending final hearing, or a trial at law, to enjoin the removal.

This is not a question of the effect of acquiescence of the officers of a municipality as barring the right to question the continuance of a public nuisance. The construction and operation of the road in the public streets rests finally on the legislative authority, and both construction and operation are under legislative, not municipal authority. The provision for the municipal consent is a condition fixed by the legislature, and whether the condition is one which renders the construction of the track altogether illegal, if the consent be not obtained, or whether the provision is a privilege given to the city, as having authority over the precise location and the construction of the tracks in the public streets, and which it may waive or fail to enforce, or to which an implied assent may be given by acquiescence, is a matter of construction of the statutes. I am inclined to think that the consent required by these charters is a privilege or right of the latter class, and that the failure to formally give this consent would not render the construction and subsequent operation of the road, under legislative authority alone, illegal or unlawful. The consents required by the Traction Company act (*P. L. 1893 p. 302 ch. 172 § 1*) extend to the use and operation of the road as well as its construction and seem to be of the former class. The construction and operation of the tracks in question, if made under legislative authority, cannot be a nuisance, and the principle of lack of power in the city officers or common council to acquiesce in nuisance does not apply. The principle which does apply is the principle relating to an acquiescence in a location of the tracks by both city and company. If the action of the city is merely such consent to, and acquiescence in, location, its rights are or may be affected by the lapse of time, and the rights acquired while acting in reliance on the acquiescence may be protected from disturbance. The ordinance passed March 1st,

1872 (*MacL. p. 448*), requiring the Orange and Newark company to run their cars from the Market street depot on the Orange route, to the terminus of their road, at fixed intervals, is formal evidence to some extent of acquiescence in the location of the curved-rail connection, if the question be, as I now think, one merely of location.

*Second.* According to my present view, the company shows a case in which it may be entitled to maintain the curved-rail connection by express legislative authority subsequently given in the charter of the Newark, Bloomfield and Montclair Horse Car Company (*P. L. 1867 p. 36; MacL. p. 59, &c.,* § *6*) authorizing it to "connect with and run over any horse car railroad or railroads running through Newark to the Market street station."

The original charters of the Orange and Newark and Broad Street Companies declared their railroads to be public highways, free for the passage of any railroad carriages, on payment of tolls. *MacL. p. 11* § *12*, Orange and Newark charter and *MacL. p. 29* § *7*, Broad Street charter. The right of the Newark, Bloomfield and Montclair company to construct any part of its railroad on any street within the limits of the city of Newark, upon obtaining the consent of the common council, was given by an amendment to the charter, March 30th, 1869 (*MacL. Comp. p. 71*) and in July, 1869 (*MacL. Comp. p. 453*), this consent was given by an ordinance which provided expressly that the tracks to be built might be connected at Broad street with the lines of the Orange and Newark Horse Car Railroad Company, "as provided by its charter." As the tracks of the Orange and Newark were at that time running to the Market street depot over the curved rails, this ordinance was a municipal consent to a construction of their road, for the purpose of running cars to the Market street station over the Orange and Newark railroad, as provided by the charter of the Bloomfield and Montclair road.

The complainant has also succeeded to the rights of the Newark, Bloomfield and Montclair railroad, and if authorized to maintain the curved rails for that purpose, cannot be required to remove them, as being a nuisance on the ground that they are illegally located or maintained in the street.

. The *third* source of ·authority for laying and maintaining the ·curved rails is based on the provision of the Traction act· of 1893. *P. L. p. 302 &c.* The first section of this act (*Gen. Stat. pp. 3235, 3236*) authorizes companies formed under this act to enter upon any street or railway upon which any street railway is constructed (with the consent of the owner or owners, lessee ·or lessees, or of the person or persons operating the same) "and * * * maintain and operate such railway." The Consolidated Traction Company, organized under this act, did enter on ;and take the railroad as then operating on the curved rails, and this claim to express legislative right to maintain the tracks, even if originally laid without municipal consent, seems to be supported by the construction given to the Traction act by the supreme court in *Jersey City* v. *North Jersey Street Railway Co., 74 N. J. Law (45 Vr.) 774 (1907)*. This decision, however, is now under review in the court of errors and appeals, and as, in my judgment, the right to lay and maintain the "curved-rail" connection is supported by the previous acts, I shall not .consider this claim. Neither do I think it necessary to· pass upon the claim of right set up in· the briefs, but not specifically set out in the bill, by which the right to maintain the curved rails is claimed under the charter of the Essex Passenger Railway Company, authorizing this company to connect their railway with that of any other passenger railway company, for the purpose of completing a route or making a circuit. While this claim of right should be considered before the final disposition ·of the case, the present application for preliminary injunction ·should, I think, be disposed of on the claims of right set out in the bill as the basis for injunction.

For the power to compel removal of the curved rails, the city ;also relies on the twenty-second section of the general ordinance for regulation of passenger railways, passed in 1859, which ·provides that

·"the common council reserves the power * * * . at any time to order the removal of and to remove any such railway track or tracks at their discretion, and to sell or dispose of the materials, and after paying expenses of . removal and sale, and repairing the highways, to pay the balance to the company or owners."

This . power to order removal apparently applies only to the removal of the entire railway from the city streets, not to the removal of portions of the track because illegally laid, or for any other reason, and the notice of the board of street and water commissioners did not purport to have been given under this supposed power. Such power of arbitrary removal could not be created either by "reservation" or otherwise, unless the legislature authorized it, and the power would be controlled by the acts of the legislature passed subsequent to the ordinance and therefore controlling its effect. *Jersey City* v. *Jersey City and Bergen Railroad Co., 20 N. J. Eq. (5 C. E. Gr.) 360 (Chancellor Zabriskie, 1869).* The charter of the city gave no arbitrary power of removal and destruction of street railways, nor any right to reserve such power of arbitrary removal. The charter of the Orange and Newark company (*MacL. p. 11 § 12*), which was passed before the ordinance, provided that if the company

"after the road is completed shall abandon the same or cease to use and keep it in repair for one successive year, in the city of Newark, that the charter shall be annulled, so far as it affects the city of Newark, and the common council may remove the same, and appropriate enough of the materials thereof to defray the expense of such removal, and for repairing the streets."

The twenty-second section of the ordinance refers, I think, to a removal of the entire road contemplated by this section of the charter; the removal of this curved-rail connection cannot be required under this twenty-second section of the ordinance.

Whether the operation of complainant's cars over these curved rails has become a nuisance, and whether this court has power to control the operation at this point, for the purpose of abating the nuisance to public travel, which is alleged to have grown up, are entirely different questions, on which no opinion is intended to be expressed.

The only question I can determine now is, the right to maintain the curved-rail connection on the street at all for any purpose, however limited. As to this, I think the company has shown a case of right, if the case is to be decided on the facts now appearing, and I think there is no doubt that it has shown

such a case as entitles it to an injunction restraining the removal until the final determination of the right.

I will advise the issuance of such injunction, but before signing the order will hear any suggestion as to the form or terms of the order.